### MELDRAM v. CURTIS & BRO., Inc.

District Court, E. D. Pennsylvania. December 11, 1928.

No. 12128.

Gibbons & Whitaker, of Philadelphia, Pa., for plaintiff.

L. M. Schoch, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Had this cause been tried in the state court, the motion would have been one for judgment in favor of the defendant n. o. v. Such a motion would meet the practical situation, because, if the argument for the defendant is accepted and following it the present rule is made absolute, it would logically lead upon a new trial to binding instructions for the defendant. The real question is whether the case should have been submitted to the jury. There is no pressed criticism of the verdict, either on the fact 'merits of the finding of negligence or the sum of the damages allowed. The sole criticism is the imputing of the negligence to the defendant. The only basis for so doing was that the defendant owned the truck which ran over the plaintiff's husband, thus causing his death, that it was at the time being operated by the regularly employed chauffeur of the defendant, and that it was in use on the business of the defendant.

The criticism of the verdict and of the charge of the court in submitting the case to the jury is based upon the doctrine that the evidence which exculpates the defendant is so clear and convincing that the court should not sustain a finding that the truck was at the time in use on the business of the defendant and because of this the jury should have been given binding instructions. The fact assertion is that the employment of the driver had ended for the day, and that he was making an unauthorized use of the truck after employment hours in what was a drunken joy ride, or at least using it on an errand in no way connected with his employment or the business of the defendant. The arguments pro and con in support and negation of the verdict are so well contained, orderly, and logical that we will follow the legal merits of the case as discussed by counsel for defendant. The fact merits we leave as presented by counsel for plaintiff and defendant respectively. The question of law is

whether the evidence raised a fact issue to be decided by a jury.

Counsel for defendant concedes that, under the law and trial procedure in Pennsylvania, the trial judge would have erred in not submitting the case to the jury. Hartig v. American Ice Co., 290 Pa. 21, 137 A. 867. It is argued, however, that this is not the law laid down by the courts of the United States. Holland v. Director (C. C. A.) 273 F. 928. The doctrine of the latter case suggests these comments: (1) The case there arose in New Jersey, and might have been tried in a New Jersey state court under the provisions of the act of Congress, and the ruling there made followed the New Jersey law; and (2) the case itself arose under a law of the United States, and the ruling followed likewise the doctrine approved by the courts of the United States.

The instant case is a Pennsylvania case and the right of action one given by the statutes of that state. It was tried in a district within the state and in this court only because it was here removed by reason of diversity of citizenship of the parties, the defendant happening to have been incorporated in another state from that of the plaintiff, and the damages laid at over $3,000.

If the Holland Case had been a Pennsylvania case, and the right of action had not been given by a law of the United States, but was one conferred by a Pennsylvania statute, it does not follow from the ruling there made that under such a changed fact situation the law laid down as the law of a Pennsylvania case would have been either the law of New Jersey or of the United States. The Holland Case in consequence does not rule this.

It is true that the Pennsylvania courts apply the Pennsylvania doctrine to cases in which the right of action is given by the act of Congress, if the cause of action arose in the state. Shaughnessy v. Director, 274 Pa. 413, 118 A. 390, 23 A. L. R. 1211. There are likewise numerous cases ruled by the United States courts, in which the trial court has been sustained in directing a verdict for defendant when it would not accept a verdict for plaintiff. Barrett v. Virginian R. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092.

■ There would not seem to be very much to choose between nullifying a verdict by entering judgment non obstante veredicto and taking from the same jury the power to render one verdict by directing it to render another. Under the conformity statutes (28 USCA §§ 724, 726–728) it is commonly assumed that, had it not been for the amendment to the Constitution of the United States, the n. o. v. judgment in the Slocum Case (228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879), would have been upheld on the very ground upon which the United States courts sustain a judgment on a directed verdict; but it is not altogether clear how the Pennsylvania courts could uphold the constitutionality of the state statute there in question, inasmuch as the state Constitution goes much further in upholding the right to trial by jury than does the Constitution of the United States.

We have, however, the law of the state as it is now declared to be that a trial court may not direct a verdict for defendant in the face of a prima facie case made out for plaintiff, and yet the same court may, after the verdict, enter judgment for defendant in the same case notwithstanding a verdict for plaintiff. It is true that the latter practice rests upon a state statute, but this is not of much help to us, because the ruling that there can be no directed verdict is planted upon the right to a trial by jury, which the Constitution of the state commands shall remain unimpaired and inviolate, and just why it is that a directed verdict infringes the right to trial by jury, but an n. o. v. judgment does not, has not been made satisfactorily clear. The truth is that formerly the Pennsylvania courts held to the same doctrine as the United States courts, and that the Hartig Case is a return to the view expressed years ago by Judge Sharswood in his Legal Ethics, and is phrased in almost his exact language. If the refusal to grant a new trial may now by statute be assigned for error in an appellate court in Pennsylvania, there is very little of a real change in the law, and it may be that the Hartig Case is a prelude to the ruling that the n. o. v. statute is unconstitutional.

The further truth is that the difference between the United States doctrine and that of the Hartig Case is merely a difference in procedural law. The state rule now is that the trial court should not enter judgment on a verdict of which the court does not approve, and should continue to set aside verdicts and grant new trials until a verdict is rendered which the court can conscientiously accept. The doctrine of the United States courts is that all may be done at once by a directed verdict which may eventually be done by repeated trials, to wit, the refusal to permit the plaintiff to get a judgment which he ought not to have. The Pennsylvania courts and the United States courts reach precisely the same result. The only

difference is that the latter take "a short cut across lots" to reach the same objective.

We are far from intending any criticism of the present doctrine of the Pennsylvania courts. It has the sanction of the approval of Judge Sharswood, and any Pennsylvania lawyer would be slow to question any doctrine which he laid down. More than this, it is admittedly the law of Pennsylvania, and as such, as we view it, is to be accepted as such and followed by the United States trial courts. It would certainly be regrettable if the law of a case should change because of the mere accident of the diversity of citizenship of the parties, and change back again by the other accident of whether the claim was less or more than $3,000. Again, as we have said, the difference here is really a difference in procedure, and in the present state of this record not even that, because the doctrine of the state courts and that of the United States alike call, if the verdict is wrong, for a new trial.

Anticipating, however, what we would be expected to do if a new trial were granted, the difference between the doctrine of the Pennsylvania cases and that of our own courts is not a difference in the law, but merely in how we apply it. If we think this verdict wrong, and follow the procedure sanctioned by the United States courts, we should grant a new trial, and at the next trial (if there is one) direct a verdict for defendant; if we follow the state procedure, we should grant a new trial now, and continue to grant new trials as long as the verdict was for the plaintiff.

We think we should follow the state rule for several reasons. One is that already mentioned, that the temptation should not be presented to a defendant to abide by the state law when it best suited his purposes, but to remove the case to the United States courts if the law there was more favorable to him. Not only what we have called the accident of citizenship, or of the "sum involved," should not change the law of a state case, but the spirit of the conformity statutes demands that a state case should be tried in a United States court as it would have been tried if it had remained in the state court, as nearly as may be. Both the Constitution of the United States and the acts of Congress mean that the change of the place of trial from the state court to a court of the United States is no more than a change of venue, to which a citizen of another state is given a right for precisely the same reason the like right is given by act of assembly in Pennsylvania, and doubtless in every state in the Union, by changing the place of trial from one county to another.

Moreover, the Pennsylvania doctrine arises out of the interpretation which the highest court of that state has placed upon the state Constitution and a state statute, and the courts of the United States always accept the state court interpretation of state Constitutions and statutes. When a case arises out of a law of the United States (as did the Holland Case), it is easy to follow the thought that it should be tried as the United States courts would try it, even if tried in a state court whose law is different, because otherwise a law of the United States would be varied by the accident of where the case was tried.

The instant case, however, arises under a statute of the state of Pennsylvania which gives a right of action to this plaintiff and the children of the decedent. Without this act of assembly there would be no case. The statute means what the courts of Pennsylvania have declared to be its meaning, and it is difficult to accept the thought that a change of venue changes the law in any respect.

The conclusion reached is that this case should be tried in accordance with the Pennsylvania rule, and this conclusion is not, as we read the cases, inconsistent with the doctrine of the Holland Case, or that of the Barrett Case, or of any of the other cases to which we have been referred.

We have thus far discussed the case as if it were heard on a motion for binding instructions, and are of opinion that the point submitted to this effect was properly refused under the Pennsylvania cases, which we further think were properly followed. The motion before us is, however, a motion for a new trial. The underlying argument addressed to us in support of the request for binding instructions is an a fortiori argument for a new trial, because a new trial should be granted, not only if a verdict for the plaintiff cannot be accepted, but even if it is against the weight of the evidence.

The case in its broad outlines is as follows: A truck owned by the defendant, driven by its employee, whose general employment was to drive it, and admittedly started at least on the business of the defendant upon a directed errand of the employer, which was in the line of the general employment of the driver. The defense is that there was such a disregard of duty on the part of the employee, such a disobedience of orders, and such an unauthorized use of the truck as to become an independent, personal use of it by the driver, wholly disassociated

from his employment and the business of the defendant. It is to be kept in mind that the question of whether a valid defense has been made out is wholly different from the other question of whether the plaintiff has made out a case, which was the question in many of the cited cases. The latter is a nonsuit question, whether so ruled, or upon a point for binding instructions.

We are so far unready to express a positive disbelief in the substantial truth of the testimony upon which this defense rests that, if the jury had credited it and found for the defendant, we would not have disturbed the verdict, although, viewing it as a juror, we would have disbelieved it in some of its details. By the same token, however, we are by no means so far convinced of its truth as to feel justified in disturbing, or any urge even to disturb, the verdict which was rendered.

█ There crept into the charge the phrase "scope of employment" and the like. These phrases are not altogether accurate. The test is not so much the scope of the general employment of the servant as whether or not he was at the time upon the business of the employer, and thus acting for him. The expressions used in the charge followed the phraseology of the pleadings and the discussion by counsel, and were doubtless adopted by counsel because, as applied to the fact situation presented by the case and defense, the tests came to very much the same thing. It is admitted by counsel for defendant, with the candor which always accompanies ability, that there was nothing misleading to the jury in the phrases employed.

The rule for a new trial is discharged, and plaintiff has leave to enter judgment on the verdict.